UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VINCENT MARK CASTILLO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-215** |
| **KATHLEEN BABINEAUX BLANCO, ET AL.** | **SECTION:  "F"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Vincent Mark Castillo, a frequent litigant in this and other courts, has filed yet another *pro se* and *in forma pauperis*[1] complaint pursuant to 42 U.S.C. § 1983 against numerous defendants asserting a variety of disparate claims.  Due to deficiencies in the original complaint, the undersigned ordered plaintiff to file a supplemental pleading setting forth with particularity each claim he is asserting, identifying each defendant named with respect to each claim, specifying the capacity or capacities in which each defendant is being sued, and stating what actions each defendant being sued in his or her individual capacity took or failed to take which violated plaintiff's rights.[2]  Plaintiff has complied with that order.[3]  However, because additional information was still

---

[1]  Because of his long history of frivolous litigation, plaintiff is barred from filing federal lawsuits *in forma pauperis* during his frequent periods of incarceration.  28 U.S.C. § 1915(g); Castillo v. Louisiana, 108 Fed. App'x 156 (5th Cir. 2004).  However, in that this lawsuit was filed while he was not incarcerated, the § 1915(g) prohibition did not apply.

[2] Rec. Doc. 6.

[3] Rec. Doc. 7.

required for the Court to properly screen the complaint, a <u>Spears</u> hearing was held on March 22, 2007, to allow plaintiff a meaningful opportunity to advise the Court of the nature and factual basis of his claims.  <u>See</u> <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985).[4]  At that hearing, plaintiff was sworn and his testimony was recorded.

Plaintiff's claims in this lawsuit stem from a parole revocation proceeding and his related incarceration.  His allegations are convoluted at best; however, the essential facts regarding the claims were recounted by him at the <u>Spears</u> hearing.

Plaintiff testified that he was convicted of attempted extortion in 2000.  After serving a portion of his sentence, he was released, over his objections and without his acquiescence, on some form of parole.  At some point thereafter, parole officials Lisa Cassara, Michael Delaune, Alvin Dupre, and Melissa Hebert conspired to falsely claim that plaintiff was in violation of the terms of his parole.  As a result of their nefarious efforts, plaintiff was in fact arrested on the purported parole violation after an unrelated civil trial in St. Charles Parish.  As a result of that arrest, he was detained in the St. Charles Parish Prison, the Elayn Hunt Correctional Center, and eventually the Dixon Correction Institute from November 10, 2005, through April 21, 2006.  Against his will, he was forced to attend a parole hearing on March 23, 2006.  Although he refused to speak or otherwise participate in that proceeding, plaintiff's parole was in fact revoked at that hearing.

In this lawsuit, plaintiff claims that he was never in fact on parole; that even if he was on parole, he was never in violation of the terms of that parole; that any term of the alleged parole

---

[4] A <u>Spears</u> hearing is in the nature of a Fed.R.Civ.P. 12(e) motion for more definite statement. <u>Eason v. Holt</u>, 73 F.3d 600, 602 (5th Cir. 1996).  <u>Spears</u> hearing testimony becomes a part of the total filing by the *pro se* applicant.  <u>Id</u>.

2

expired prior to being revoked; and that the alleged parole was wrongly revoked. That said, plaintiff conceded at the <u>Spears</u> hearing that the decision revoking his parole has not to this point been invalidated in either the state or federal courts.

Plaintiff now seeks to challenge the parole violation charges, the parole revocation proceedings and outcome, and various events that occurred during his related period of incarceration.

With respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

The Court has broad discretion in determining the frivolous nature of the complaint. <u>Cay v. Estelle</u>, 789 F.2d 318, 325 (5th Cir. 1986), <u>modified</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Booker v. Koonce</u>, 2 F.3d 114 (5th Cir. 1993). In making that determination, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989); <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994). Thus, a complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994); <u>Booker</u>, 2 F.3d at 115 & n.6.

Broadly reading plaintiff's complaint,[5] and fully considering his Spears hearing testimony, the Court finds that plaintiff's claims should be dismissed as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

The State of Louisiana

With respect to a number of his claims, plaintiff has named the State of Louisiana as a defendant.  However, the United States Fifth Circuit Court of Appeals has held:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts. ... [T]he Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity. By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court.  See La.Rev.Stat.Ann. § 13:5106(A).
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power.  We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280-81 (5th Cir. 2002) (quotation marks and citations omitted).  Accordingly, this Court has no jurisdiction over plaintiff's claims against the State of Louisiana, and those claims should be dismissed without prejudice.  See Warnock v. Pecos County, Texas, 88 F.3d 341, 343 (5th Cir. 1996).

---

[5] The court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

4

<u>The Louisiana Parole Board and the Louisiana Department of Parole</u>

With respect to several claims, plaintiff has named the Louisiana Parole Board and the Louisiana Department of Parole as a defendants.  Because those entities are state agencies, the claims against them are likewise barred by the Eleventh Amendment and should be dismissed without prejudice.  <u>Castillo v. Self</u>, Civ. Action No. 06-9872, 2007 WL 1741856 (E.D. La. June 14, 2007); <u>see also</u> <u>Andrews v. Parole Board of Louisiana</u>, Civ. Action No. 06-0857-A-M2, 2007 WL 986924, at *1 (M.D. La. Feb. 28, 2007) (Noland, M.J.) (adopted by Parker, J., on March 28, 2007).

<u>The Louisiana Department of Public Safety and Corrections</u>

With respect to several claims, plaintiff has named the Louisiana Department of Public Safety and Corrections as a defendant.  Because that department is also a state agency, the claims against that defendant are likewise barred by the Eleventh Amendment and should be dismissed without prejudice.  <u>Champagne v. Jefferson Parish Sheriff's Office</u>, 188 F.3d 312 (5th Cir. 1999).

<u>Official-Capacity Claims Against State and Local Officials and Employees</u>

Plaintiff has asserted official-capacity claims against various state officials and employees. However, a claim against a state official or employee in his or her official capacity is actually a claim against the state itself.  <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991).  Accordingly, those claims are likewise barred by the Eleventh Amendment and should be dismissed without prejudice.

Plaintiff has also asserted official-capacity claims against various local officials.  Those claims are actually ones against the entities of which the local officials are agents.  <u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 466 (5th Cir. 1999).  Accordingly, the official-capacity claims would

in reality be a claims against the local governmental bodies.  However, in order to hold a local governmental body accountable for a constitutional violation, a plaintiff must allege that (1) an employee of the local governmental body violated plaintiff's clearly established constitutional rights with subjective deliberate indifference, and (2) the violation resulted from a policy or custom adopted or maintained by the local governmental body with objective deliberate indifference.  See Olabisiomotosho v. City of Houston, 185 F.3d 521, 528-29 (5th Cir. 1999).  Plaintiff does not allege that the purported constitutional violations in this case resulted from an official policy or custom.  Accordingly, the official-capacity claims against the local officials should likewise be dismissed.

Elayn Hunt Correction Center, the Dixon Correctional Institute,

and the St. Charles Parish Prison

With respect to several claims, plaintiff has named the Elayn Hunt Correctional Center, the Dixon Correctional Institute, and the St. Charles Parish Prison as defendants.  However, a jail is merely a building, not a "person" subject to suit under 42 U.S.C. § 1983.  See, e.g., Cullen v. DuPage County, No. 99-C-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); Whitley v. Westchester County Correctional Facility Administration, No. 99-CIV-0420(SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993); Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989); Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (E.D. Pa. 1976).  Accordingly, those claims should be dismissed with prejudice.

<u>The St. Charles Parish Sheriff's Department</u>

With respect to several claims, plaintiff has named the St. Charles Parish Sheriff's Department as a defendant.  "[A] sheriff's office is not a legal entity capable of being sued ...." <u>Cozzo v. Tangipahoa Parish Council–President Government</u>, 279 F.3d 273, 283 (5th Cir. 2002); <u>see also</u> <u>Causey v. Parish of Tangipahoa</u>, 167 F. Supp. 2d 898, 904 (E.D. La. 2001); <u>Ruggiero v. Litchfield</u>, 700 F. Supp. 863, 865 (M.D. La. 1988).  Accordingly, those claims should be dismissed with prejudice.

<u>The United States Postal Service and Postmasters in Their Official Capacities</u>

Plaintiff has also sued the United States Postal Service.  The United States Supreme Court has noted that the United States Postal Service is an independent establishment of the executive branch of the Government of the United States and, therefore, "enjoys federal sovereign immunity absent a waiver."  <u>Dolan v. United States Postal Service</u>, 126 S.Ct. 1252, 1255-56 (2006).  That sovereign immunity has not been waived with respect to claims, such as the one asserted by plaintiff, "arising out of the loss, miscarriage, or negligent transmission of letters or postal matter."  28 U.S.C. § 2680(b); <u>see also</u> <u>Dolan</u>, 126 S.Ct. at 1256; <u>Insurance Company of North America v. United States Postal Service</u>, 675 F.2d 756, 759 (5th Cir. 1982); <u>Pruitt v. United States Postal Service</u>, 817 F. Supp. 807, 808 (E.D. Mo. 1993).  Accordingly, those claims should be dismissed without prejudice.

Plaintiff has also asserted official-capacity claims the unidentified postmasters for zip codes 70776, 70748, and 70757, as well as Shirley S. Schayot, the postmaster for 70787.  Those claims should likewise be dismissed because they are also barred by sovereign immunity.  <u>See</u> <u>Gomez-</u>

Perez v. Potter, 476 F.3d 54, 57 (1st Cir. 2007); Franklin v. Henderson, 15 Fed. App'x 205, 207 (6th Cir. 2001); Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998).

Multi-Defendant Individual-Capacity Claims

Plaintiff asserts identical claims against a number of the defendants.  To avoid needless repetition, the Court will address together the claims asserted against more than one individual.

Plaintiff claims that Lisa Cassara and Melissa Hebert refused to transfer his parole, which he disputes he was even on, to New Orleans.  Under Louisiana law, a person granted parole may be required "[t]o remain within the limits fixed by the certificate of parole" and "[t]o live ... at the places stated in his parole plan" until such time as he obtains permission otherwise from his parole officer.  La.Rev.Stat.Ann. § 15:574.4(H)(3)(b) and (i).  Plaintiff has identified no authority for his implicit assumption that a failure to grant such permission would violate the United States Constitution, and this Court is aware of none.

Plaintiff next asserts a number of claims regarding his detention on the alleged parole violation.  First, plaintiff alleges that Lisa Cassara, Michael Delaun, Alvin Dupre, and Melissa Hebert conspired to unlawfully detain plaintiff on false and otherwise wrongful parole violation charges.  Second, plaintiff alleges that Greg Champagne, John Nowak, Cornel H. Hubert, and James LeBlanc then unlawfully detained plaintiff on those false charges without a warrant or court order.  The fly in plaintiff's ointment, however, is that even he acknowledges that his alleged parole was in fact subsequently revoked.  Because that revocation has never been invalidated in either state or federal court, and because a judgment in plaintiff's favor in these proceedings on these claims would necessarily imply the invalidity of the parole revocation and related detention and incarceration on

8

those charges, his claims are currently barred.  Heck v. Humphrey, 512 U.S. 477 (1994); Littles v. Board of Pardons and Paroles Division, 68 F.3d 122 (5th Cir. 1995) (applying Heck in the context of a parole revocation); see also German v. Baker, 124 Fed. App'x 257 (5th Cir. 2005); Sanders v. Johnson, 97 Fed. App'x 499 (5th Cir. 2004); Hood v. Shaw, No. 99-10654, 2000 WL 290155 (5th Cir. Feb. 16, 2000).

Plaintiff complains that Governor Blanco and Genie C. Powers[6] failed to intervene in response to his letters informing them that he was being illegally detained without a warrant, court order, or bond.  Those claims fail for two reasons.

First, the claims fail for lack of personal involvement.  "Personal involvement is an essential element of a civil rights cause of action."  Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). It is beyond question that plaintiff has targeted these defendants not because of their personal involvement in the perceived wrongs against him, but instead merely because they hold positions of authority or have supervisory responsibilities.  However, "there is no concept of supervisor strict liability under section 1983."  Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984); see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996).  Further, an official cannot be held liable pursuant to 42 U.S.C. § 1983 under any theory of vicarious liability.  Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability.").

As an attempt to circumvent those general principles, plaintiff essentially argues that Blanco and Powers have some measure of personal involvement by the fact that they took no action in

---

[6] Plaintiff alleges that Powers is the Chief of the Louisiana Department of Parole.

response to plaintiff's letters to them concerning the alleged violations of his rights.  However, they are under no legal obligation to respond to correspondence from prisoners, and a prisoner's constitutional rights are not violated simply because his complaints fall on deaf ears.  A prisoner "does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction."  Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005).

Second, in any event, plaintiff's claims against Blanco and Powers again call into question his detention on the parole violation charges and are therefore barred by Heck for the reasons previously set forth.

Plaintiff next complains that Governor Blanco, Genie C. Powers, Lisa Cassara, Michael Delaun, Alvin Dupre, Cornel H. Hubert, James LeBlanc, Greg Champagne, and John Nowak refused provide plaintiff with a bond, refused to produce requested discovery, and refused to provide plaintiff with counsel.  As to the bond and the appointment of counsel, those are matters over which the state trial court, not these defendants, had control; therefore, they obviously cannot be held liable for the denial.  As to the failure the respond to discovery, such a failure, even if it occurred, is not a cognizable constitutional deprivation.  See, e.g., Foster v. City of Lake Jackson, 28 F.3d 425, 430 (5th Cir. 1994) (constitutional right to access to the courts does not encompass the right to be free of discovery abuses).  If plaintiff believed that he was wrongly being denied discovery, his recourse was to file a motion to compel in the state trial court, not a federal civil rights action.

Plaintiff complains that Governor Blanco, Cornel H. Hubert, James LeBlanc, Greg Champagne, and James Nowak failed to intervene when informed that state and local law enforcement and penal officials failed and refused to record prisoners' change of addresses requests,

destroyed prisoner's sent or returned mail, and refused to forward such mail.  Again, an official's failure to intervene and satisfactorily resolve problems brought to his or her attention through a prisoner's complaint simply is not actionable.  Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005).

Plaintiff claims that the unidentified postmasters for zip codes 70776, 70748, and 70757, as well as Shirley S. Schayot, the postmaster for 70787, violated his rights by failing and refusing to record prisoners' change of addresses requests, destroying prisoner's sent or returned mail, and refusing to forward such mail.  First, this again is a misguided and prohibited effort to impose a form of supervisory liability.  Second, in any event, claims regarding alleged violations of Postal Service regulations are not cognizable in the federal courts.  Currier v. Henderson, 190 F.Supp.2d 1221, 1227 (W.D. Wash. 2002), aff'd, 379 F.3d 716 (9th Cir. 2004).  Third, to the extent that plaintiff is complaining that prisoners are treated differently than nonprisoners with respect to the mails, reasonable discrimination and preferences among users of the mail are permissible in light of the legitimate goals of providing efficient and economical service.  Id. at 1232.  Even assuming *arguendo* that the postal service employees refuse to forward the mail of prisoners, that policy would be a rational one in light of the frequency with which prisoners are moved from one facility to another.

Plaintiff claims that while he was incarcerated at the Elyan Hunt Correctional Center, Cornel H. Hubert and Foy G. Beall denied him sufficient quantities of legal supplies for his extensive

11

litigation efforts,[7] access to the law library or its services,[8] and access to a telephone and telephone directory.

As to the complaints of insufficient quantities of legal supplies and denial of access to the law library and its services, those are "access to courts" claims. It is clear that inmates have a constitutional right of meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 828 (1977). However, the right of access to the courts is not unlimited; rather, it encompasses the right of "a reasonable inmate to conduct reasonable litigation." See Hoppins v. Wallace, 751 F.2d 1161, 1162 (11th Cir. 1985). Prison officials are not required by the Constitution to enable particularly litigious inmates to pursue frivolous litigation. See Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (the right of access to the courts encompasses an reasonably adequate opportunity to file nonfrivolous legal claims); see also Lewis v. Dretke, No. 02-40956, 2002 WL 31845293 (5th Cir. Dec. 11, 2002) ("there is no constitutional right to bring a frivolous action"). It is beyond cavil that plaintiff is both particularly litigious[9] and has a penchant for frivolous litigation.[10] Moreover, in any event, claims

---

[7] Plaintiff testified at the Spears hearing that prisoners, including himself, were given limited legal supplies each month, but not in a quantities sufficient to meet plaintiff's needs. He testified that he needed extra envelopes in particular because he was writing letters "every day," sending out more than one hundred letters during his incarceration.

[8] At the Spears hearing, plaintiff testified that if he requested a copy of a specific statute or case, it would be provided; however, he essentially complains that he had no means to perform meaningful legal research or have such research done on his behalf.

[9] At the Spears hearing, plaintiff identified himself as "Louisiana's most prolific *pro se* litigator." That claim is hardly an idle boast, in that the U.S. Party/Case Index (PACER) indicates that plaintiff has filed dozens of civil actions in federal court alone.

[10] See Castillo v. Louisiana, 108 Fed. App'x 156 (5th Cir. 2004).

alleging violations of the right of access to courts are not cognizable unless the prisoner's position as a litigant was prejudiced by the denial of access to the courts.  See, e.g., Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999); Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); McDonald v. Steward, 132 F.3d 225, 230-31 (5th Cir. 1998); Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993).  At the Spears hearing, plaintiff was asked what prejudice he suffered as a result of the restrictions and limitations, and he could identify none.  Accordingly, his access to courts claims necessarily fail.

As to restrictions on his access to a telephone, an inmate has no constitutional right to unlimited access to a telephone, especially where adequate alternative means of communication, such access to the mail, is available.  See Bellamy v. McMickens, 692 F. Supp. 205, 214 (S.D.N.Y. 1988); Howard v. Cherish, 575 F. Supp. 34 (S.D.N.Y. 1983); Pino v. Dalsheim, 558 F. Supp. 673, 675 (S.D.N.Y. 1983).  Plaintiff conceded at the Spears hearing that he was allowed to send and receive mail while imprisoned. Regarding the alleged denial of access to a telephone directory, the Court has found no authority for plaintiff's implicit assumption that an inmate has a constitutional right to such a directory.  See Lee v. Stynchcombe, 347 F.Supp. 1076, 1080 (D. Ga. 1972) (allowing inmates access to a telephone directory  "only when necessary to make emergency calls" did not amount to a constitutional violation).

Plaintiff claims that D. Derosin and J. Ory unlawfully deprived him of his personal property, including a large bottle of Cool Water cologne, two sticks of deodorant, three tubes of toothpaste, two bars of soap, one razor blade, four bowls of cereal, a cigarette lighter, and store merchandise cards.  Plaintiff further complains that Derosin unlawfully deprived him of forty security-lined

envelopes.  For the following reasons, such claims for deprivation of property are not actionable under § 1983.

In Parratt v. Taylor, 451 U.S. 527 (1981), the United States Supreme Court held that where a state actor, through his random and unauthorized actions, *negligently* deprives a prisoner of his property, there is no due process violation *if* the state provides an adequate postdeprivation remedy. In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court extended that holding to *intentional* deprivations of property.  In Daniels v. Williams, 474 U.S. 327, 330-31 (1986), the Supreme Court then overruled Parratt in part, holding that merely negligent deprivations of property simply do not implicate the Due Process Clause at all.

It is of no consequence whether plaintiff is alleging that he was deprived of his property through negligence or an intentional act, because "in neither instance does he state a valid § 1983 action for deprivation of property." Geiger v. Jowers, 404 F.3d 371, 374 (5ᵗʰ Cir. 2005).  If plaintiff is claiming negligence, his claim is barred by Daniels.  If he is claiming intentional conduct, the claim is barred by Hudson, in that Louisiana law clearly provides him with an adequate postdeprivation remedy, i.e. a tort suit brought in state court.  Marshall v. Norwood, 741 F.2d 761, 764 (5ᵗʰ Cir. 1984); Bennett v. Louisiana Department of Public Safety and Corrections, 61 Fed. App'x 919 (5ᵗʰ 2003); Arnold v. Inmate Accounts, 48 Fed. App'x 105 (5ᵗʰ Cir. 2002).  Accordingly, he may not pursue such a claim in this federal forum.

Plaintiff claims that J. Ory and A. Celestine unlawfully shaved plaintiff's head.  Plaintiff believes that he did not need a haircut at the time.  When asked at the Spears hearing why he felt the haircut violated his civil rights, plaintiff testified that it constituted an illegal taking of his property,

14

i.e. his hair.  He also stated that his constitutional rights to equal protection were violated because the heads of female prisoners are not shaved.

First, the fact that plaintiff believed his hair was sufficiently short is of no consequence. Prison officials felt otherwise, and, when one is in prison, it is their judgment that matters.  How short is "short enough" is simply not a question of constitutional dimension, and the federal courts leave such minutiae to the discretion of prison officials.  See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990) ("The Supreme Court has established a "minimum intrusion" policy into the decisions of state prison administration that provides these officials with wide discretion in the operation of prison facilities.").  Second,  plaintiff's claim that cutting his hair constituted an illegal "taking" of his property is patently asinine, and, again, such "property deprivation" claims are, in any event, barred by the Parratt/Hudson doctrine as previously noted.  Third, federal jurisprudence makes clear that differing regulations regarding hair for male and female prisoners does not violate the federal Equal Protection Clause.  Hill v. Estelle, 537 F.2d 214, 215-16 (5th Cir. 1976); see also Abordo v. Hawaii, No. 96-16511, 1998 WL 196626, at *1 (9th Cir. Mar. 11, 1998); Williams v. Wilkinson, No. 96-3715, 1997 WL 809971, at *4 (6th Cir. Dec. 18, 1997); Campbell v. Purkett, 957 F.2d 535 (8th Cir. 1992); Dreibelbis v. Marks, 742 F.2d 792, 795-96 (3rd Cir. 1984).

Plaintiff claims that Jeremiah Ardoine, Unknown Hayes, and Unknown Grimes conspired to place plaintiff in administrative segregation based on a false disciplinary report. The United States Fifth Circuit Court of Appeals has held that a prisoner's claim that he was he was falsely accused of a disciplinary infraction "is indistinguishable from a malicious prosecution claim."  Ordaz v. Martin, No. 93-4170 (5th Cir. Sept. 15, 1993) (unpublished).  However, in 2003, the Fifth Circuit

15

reexamined the body of law regarding malicious prosecution claims in federal civil rights actions and held that there is no "freestanding constitutional right to be free from malicious prosecution." Castellano v. Fragozo, 352 F.3d 939, 945 (5ᵗʰ Cir. 2003).  Therefore, a prisoner's claim that disciplinary proceedings were wrongly initiated against him fails to state a claim upon which relief may be granted.  Figgs v. Vrazel, 106 Fed. App'x 260, 261 (5ᵗʰ Cir. 2004).[11]

---

[11]  Moreover, even under prior law,  plaintiff's claim would fail because he could not meet the "favorable termination" requirement to pursue such a claim.  In Ordaz, the Fifth Circuit noted:

> Even assuming that there is a federally protected right to be free from malicious prosecutions (including false disciplinary charges in the confines of a state prison), however, we have held that "a plaintiff may not state a claim under § 1983 for malicious prosecution absent proof that the prosecution terminated in his favor." [Brummett v. Camble, 946 F.2d 1178, 1180 (5ᵗʰ Cir. 1991).]  Our reasoning in this regard is straightforward:
>
> > Absent a ... requirement of "favorable termination" for the constitutional tort of malicious prosecution, a plaintiff could state a § 1983 claim even in cases in which he was ultimately convicted.  In such cases, the federal courts would be forced to permit defendants to relitigate the merits of their criminal prosecutions via § 1983 despite the state court conviction.  Such a rule, which poses the prospect of harassment, waste, and endless litigation, conflicts with the most basic principles of federalism.
>
> Id. at 1183.
> The concerns highlighted in Brummett apply equally, if not with more force, in the context of § 1983 claims predicated on the filing of false disciplinary charges in state prisons.  Without an allegation "that the [disciplinary proceeding] terminated in his favor," [the prisoner] simply has not made an arguable showing that any federally protected right has been violated.  Absent such an allegation, his false disciplinary claim is legally frivolous under our precedent.

Ordaz, No. 93-4170; see also Reed v. Quarterman, No. 96-40949 (5ᵗʰ Cir. Oct. 20, 1997); Reed v. Griggs, No. 94-40587 (5ᵗʰ Cir. Dec. 13, 1994).  In the instant case, plaintiff would be unable to meet the "favorable termination" requirement.

Plaintiff claims that Cornel H. Hubert, Unknown Douglas, and Unknown Pedescleaux forced plaintiff to attend the parole revocation hearing against his will. Even if that occurred, plaintiff has identified no basis on which such an action would violate the United States Constitution, and this Court is aware of none.

Plaintiff claims that Christy LeBlanc, Angela Griffen, and Unknown Albright, all of whom are officers or employees at the Elayn Correctional Center, advised the parole board of plaintiff's pending prison disciplinary charges. Again, even if the Court assumes that this in fact occurred, plaintiff has identified no basis on which such an action would violate the United States Constitution, and this Court is aware of none.

Plaintiff claims that Unknown Daniels, Unknown Dykes, Unknown Lazzard, and Unknown Curtis refused to record that plaintiff was on a hunger strike from March 22-24, 2006, in violation of prison policy. Plaintiff states that his "hunger strike" was a form of speech and that the officers were denying him his right to "free speech" by not documenting it. Even if the Court were to assume that a prison policy required officers to document the hunger strike, an official's mere failure to follow such a policy does not amount to an actionable violation. See Stanley v. Foster, 464 F.3d 565 (5th Cir. 2006); Sandoval v. Fox, 135 Fed. App'x 691, 691-92 (5th Cir. 2005). Further, even if plaintiff's hunger strike were considered a form of expressive speech, the officers were not denying him the opportunity to so express himself. They simply were not aiding him, and this Court is aware of no constitutional provision which require them to do so.[12]

---

[12]   Moreover, the delivery of his "message" was not ultimately thwarted by the failure to record his hunger strike. At the Spears hearing, plaintiff acknowledged that he made prison officials aware of his hunger strike by later filing grievances.

<u>Individual-Capacity Claim Against Kathleen Babineaux Blanco</u>

In addition to the other claims against Blanco discussed previously, plaintiff also alleges that Governor Blanco failed to properly train or educate the members of the State of Louisiana Parole Board.  Not only is there no basis for finding that the governor is personally responsible for the training and education of the members of the parole board, but, again, this claim fails because it is nothing more than a thinly veiled attempt "to base liability solely on [the defendant's] supervisory role and [her] general, nonspecific failure to ensure that parolees' rights were not violated." <u>Woods v. Chapman</u>, No. 06-10450, 2007 WL 1647882, at *2 (5th Cir. June 7, 2007).  Moreover, it is clear that "[p]laintiffs cannot prevail by styling their complaints about [a] specific injury suffered as a failure to train claim." <u>Roberts v. City of Shreveport</u>, 397 F.3d 287, 293 (5th Cir. 2005).  Vague and conclusional allegations of a failure to train simply do not give rise to § 1983 liability.  <u>Yates v. Unidentified Parties</u>, 73 Fed. App'x 19, 20 (5th Cir. 2003).

<u>Individual-Capacity Claims Against Cornel H. Hubert</u>

In addition to the other claims against Hubert previously discussed, plaintiff claims that Hubert held him "in a diagnostic state for over two months" upon his arrival at the Elayn Hunt Correctional Center.  When asked to explain this claim at the <u>Spears</u> hearing, plaintiff testified that incoming prisoners are held in a special unit for evaluation to determine where they should be sent to serve their time.  Plaintiff complains that, as an allege parole violator, he should have simply been placed directly in a less restrictive open dorm.  Plaintiff's claim is not cognizable because "[a] prison inmate does not have a protectable liberty or property interest in his custodial classification." <u>Wilson v. Budney</u>, 976 F.2d 957, 958 (5th Cir. 1992); <u>see also</u> <u>Cato v. Watson</u>, 212 Fed. App'x 258,

259 (5th Cir. 2006).  Moreover, a prisoner has "no protected liberty interest in the location of his confinement" or right to be housed "in a particular cell block or wing of the prison."  Yates v. Stalder, 217 F.3d 332, 334 (5th Cir. 2000); Luedtke v. Gudmanson, 971 F.Supp. 1263, 1270 (E.D. Wis. 1997).

Plaintiff also complains that Hubert failed to provide him with a hearing regarding the disciplinary charges instituted by Jeremiah Ardoine, Unknown Hayes, and Unknown Grimes.  That claim, which is essentially a due process claim, likewise has no merit.

The United States Supreme Court has held:

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 483-84 (1995) (citations omitted).  The United States Fifth Circuit Court of Appeals has held: "In the wake of Sandin, ... 'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'"  Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996) (quoting Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995)).  The Fifth Circuit has further noted that after Sandin "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the *duration* of confinement, will henceforth qualify for constitutional 'liberty' status" entitled to procedural due process protections.  Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995) (emphasis added).  Stated differently, the Fifth Circuit has observed that the liberty interests protected by the Due Process Clause are "generally limited to state created regulations or statutes which affect the *quantity of time*

rather than the *quality of time* served by a prisoner." Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) (emphasis added).

In the instant case, plaintiff's punishment was placement in administrative segregation. That punishment affected only the quality, not the quantity, of the time he had to serve and was not an atypical and significant hardship in relation to the ordinary incidents of prison life. Accordingly, Sandin bars plaintiff's due process claim.

Plaintiff also complains that Hubert required that he attend the parole hearing in shackles and restraints. The Court knows of no basis on which that is impermissible under federal law. See Biggs v. Ylst, No. CIV S-04-2667, 2007 WL 809808, at *7 (E.D. Cal. Mar. 15, 2007) (Kellison, M.J.) (adopted by England, J., on April 2, 2007).

Plaintiff additionally claims that he injured his back at the Elayn Hunt Correctional Center and that Hubert denied him medical treatment by having him transferred to the Dixon Correctional Institute days prior to a scheduled medical appointment. The Court finds that claim must likewise be dismissed.

An inmate's constitutional right to medical treatment is violated only where his serious medical needs are met with deliberate indifference on the part of penal authorities. Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). Even if it is assumed that plaintiff had a serious medical need, which is not by any means established,[13] the transfer to Dixon merely delayed plaintiff's medical treatment. A delay in medical care amounts to a constitutional violation only if

---

[13] The United States Fifth Circuit Court of Appeals has held: "[C]ontinuing back pain is unpleasant. Its existence does not, however, in and of itself demonstrate a constitutional violation." Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

there has been deliberate indifference which results in substantial harm.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).  Plaintiff has not alleged that he suffered any harm, much less substantial harm, as a result of the delay.

### Individual-Capacity Claim Against D. Derosin

In addition to the other claims against Derosin previously discussed, plaintiff also claims that he was assaulted by Derosin on January 3, 2006.  Specifically, plaintiff claims that he was grabbed and pushed by Derosin, causing plaintiff to trip and hit his head.  Plaintiff testified at the Spears hearing that he was not injured in the altercation.  This claim is patently frivolous.  The United States Supreme Court has held that not every "malevolent touch by a prison guard gives rise to a federal cause of action."  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Rather, excluded from "constitutional recognition are *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Id. at 10 (quotation marks omitted).  Moreover, the United States Fifth Circuit Court of Appeals has held that to support an excessive force claim the plaintiff "must have suffered from the excessive force a more than *de minimis* physical injury."  Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999).  Accordingly, this Court has no hesitation in concluding that the single shove here, which was not an action "repugnant to the conscience of mankind" and which resulted in no physical injury, clearly fails to rise to the level of a constitutional violation.

### Individual-Capacity Claim Against Unknown Douglas

In addition to the other claim against Douglas discussed previously, plaintiff also claims that Douglas forced plaintiff to do "extra duty" on one Saturday, which he observes as the Sabbath.

Plaintiff claims that Douglas forced plaintiff and other inmates to work on that Saturday, despite the fact that Saturday is not normally considered a workday for prisoners.  Plaintiff testified that, other than that one occasion, he was allowed to practice his religion and observe his beliefs without incident.  Suffice it to say, even if this event in fact occurred as alleged, any infringement of plaintiff's religious rights on this one occasion was *de minimis*.  As is his wont in this and his other myriad cases, plaintiff again quite literally tries to make a federal case out of every perceived slight or wrong no matter how isolated or insignificant.  He obviously fails to understand that some actions are so inconsequential that they simply do not implicate the federal Constitution even under its most liberal interpretation.  This Court concludes that the actions of a prison guard, who clearly without discriminatory motivations, required *all* inmates *regardless of their religion* to perform work on  a single occasion simply cannot be considered to run afoul of constitutional protections against religious discrimination.  See Rapier v. Harris, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) ("De miminis burdens on the free exercise of religion are not of constitutional dimension."); Hadi v. Horn, 830 F.2d 779, 787-88 (7th Cir. 1987) (prison officials should not be held liable in damages "for failing on isolated occasions to accommodate the religious needs of inmates"); Buck v. Lake County Sheriff, No. 03 C 1740, 2004 WL 2983966, at *8 (N.D. Ill. Dec. 23, 2004); Cancel v. Mazzuca, 205 F.Supp.2d 128 (S.D.N.Y. 2002).

### State Law Claims

Plaintiff indicates that he is also asserting claims under state law.  However, if plaintiff's federal claims are dismissed as recommended, it is appropriate for the Court to decline to exercise supplemental jurisdiction over the state law claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [pendent] claim ... if ... the district court

has dismissed all claims over which it has original jurisdiction."); <u>see also</u> <u>Bass v. Parkwood Hospital</u>, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.").

<strong>RECOMMENDATION</strong>

It is therefore **RECOMMENDED** that plaintiff's federal claims against the State of Louisiana, the Louisiana Parole Board, the Louisiana Department of Parole, the Louisiana Department of Public Safety and Corrections, the state officials and employees in their official capacities, the United States Postal Service, and the postmasters in their official capacities be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

It is **FURTHER RECOMMENDED** that plaintiff's remaining federal claims be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B).

It is **FURTHER RECOMMENDED** that plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this sixth day of July, 2007.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**